ANDREW J. KING

v.

MARY JANE WILSON, ANTONIO CAPELLA et al.

1. Foreign attachment duly issued and levied upon the interest of one of two tenants in common in lands, pending proceedings under the attachment, and before sale thereunder, the tenants in common made a lease for years, and lessee entered. Subsequently, the interest of one of the tenants in common was sold by virtue of the attachment, purchased by complainant, and conveyance duly made to him.—*Held*, that the complainant was entited to hold his share allotted to him on partition free and clear of the lease.

2. The decree in partition declared that each of the parties was entitled "to have, hold, use, occupy, possess and enjoy in severalty" the share allotted to him.—*Held*, that in execution of that decree an injunction should issue, upon proper case made, to prevent any of the parties to the suit interfering with or molesting any other party in the possession of his share.

Upon petition for injunction.

The facts of this case are the following: Prior to the 21st day of November, 1886, the defendants Mary Jane Wilson and her brother, Henry R. Wilson, were the owners, as tenants in common, of a tract of land in the county of Atlantic, containing about three hundred and twenty acres, the said Mary Jane Wilson being the owner of an equal undivided two-thirds part, and the said Henry R. Wilson being the owner of an equal undivided one-third part thereof. On that day a writ of attachment was issued out of the supreme court, at the suit of Ralph H. Conover, against Henry R. Wilson and two others, by virtue of which the sheriff attached the interest of Wilson in said lands, and such proceedings were had on that attachment that an auditor was appointed, who made his report, and on the 30th of July, 1890, judgment final was entered in favor of the plaintiff in attachment against the defendants for $3,745.76, besides costs. By virtue of an order of the court the auditor appointed in that suit advertised the interest of Wilson for sale, and on the

28th of November, 1890, the auditor sold the one-third interest of Wilson to the complainant herein, and in pursuance thereof made and executed his deed to the complainant, dated the 29th of May, 1891, acknowledged and delivered on that day, and duly recorded on the 31st of July, 1891. Between the time of the execution of the writ of attachment and the execution and delivery of the auditor's deed, to wit, on the 1st of May, 1890, Mary Jane Wilson and her brother, Henry R. Wilson, by written lease, demised the premises to one Fao for the term of ten years, at a yearly rent of $120, and Fao, on the 2d of February, 1891, assigned this lease to the defendant Capella, who entered into possession under it and occupied the premises, part of which was woodland and part cultivated lands. He was in such possession at the time of the auditor's sale, and was present thereat, and had notice that it was made by virtue of an attachment against Henry R. Wilson's one-third interest in the premises, levied anterior to the date of his lease; and it was explained to him that the effect of the sale would be to give the purchaser a title paramount to his lease, as to one-third.

Between that date and the 31st of October, 1894, the date of the filing of the bill herein, complainant and Capella were in frequent communication, and Capella paid two-thirds of his rent to the agent of Mary Jane Wilson, and paid the other one-third to the complainant, but the complainant refused to recognize the lease, and so stated to Capella, and all his receipts were given simply for use and occupation of the premises.

On October 31st, 1894, complainant filed his bill of partition herein, setting out his title under the attachment, and then stating that the defendant Capella was in possession of the whole farm, and claimed to be entitled to the exclusive possession and enjoyment of it, by virtue of a lease from Mary Jane and Henry R. Wilson, for a term of ten years, not yet expired; alleging that the lease was executed subsequent to the service and return of the writ of attachment against Henry R. Wilson, and that the complainant became seized of the one third undivided interest of Wilson in the premises free and clear and unaffected by the subsequent lease executed by Wilson, and that the lease was void as against the complainant's title.

Capella was duly made a defendant, acknowledged service of process of subpœna, and was present in the court-room when the decree was made referring the matter to a master to ascertain and report the condition of the title, and was invited to appear before the master for that purpose, and, in point of fact, handed his lease to the solicitor of complainant to submit to the master, who reported that the complainant was seized of an undivided one-third part of the premises, and the defendant Mary Jane Wilson was seized of an undivided two-thirds part, subject to the leasehold interest of Capella. That report was confirmed, and a commission was issued to make a partition. The commissioners met, went upon the ground, and made an actual partition, Capella being present at that meeting. The report of the commissioners was confirmed by a decree which described by metes and bounds the share set off to each of the parties, and decreed that the complainant " do have, hold, use, occupy, possess and enjoy in severalty " the share so allotted to him ; and that the defendant Mary Jane Wilson have, hold, use, occupy, possess and enjoy in severalty the share allotted to her, subject to the leasehold interest of Antonio Capella therein.

Between the date of the auditor's sale and the partition proceedings Capella had cut off the timber on over thirty acres of woodland, cleared out the stumps and cultivated the land, raised vegetables and planted blackberry vines. This was done with the knowledge of the complainant, but against his protest. He swears, and I cannot but believe him, that he notified Capella that he was doing this clearing at his own risk, and that he would be liable to have it taken away from him on a partition. In point of fact, the share set off to the complainant comprised about thirty-two acres of cultivated land which had been reclaimed by Capella in the manner just stated.

After the confirmation of the partition the complainant entered into possession of his lands, upon which there was no dwelling, and proceeded to build a fence on the partition line across the cultivated lands just mentioned, enclosing on his side of the boundary about thirty-two acres of such land. Mr. Capella resisted this work with force, and drove him and his

King *v.* Wilson.

workmen from the ground. Thereupon the complainant filed his petition, stating his rights in the premises, and praying an injunction against Capella's further interference with him in the enjoyment of his premises and from going into or upon the lands of the complainant, or in any manner molesting him in the enjoyment of the possession of the premises.

Capella answered this petition, setting up his lease, and that the complainant had recognized him as tenant by accepting rent under the lease, and denying that he had any notice of complainant's superior title, and that complainant had encouraged the clearing and planting the land in question.

Witnesses were examined and proofs taken in open court upon the petition and answer.

*Mr. Charles S. King,* for the complainant.

*Mr. Charles L. Cole,* for the defendant.

PITNEY, V. C.

The defendant was permitted on the hearing of the petition to prove any facts which tended to show that he had any defence to the complainant's equity against him set out in his bill, or any ground to vary the decree which had been made. In this he failed.

By the fifty-third section of the Attachment act (*Rev. 1877 p. 51*) the complainant's title relates back to the date of the issuing of the attachment, and that date in this case was, confessedly, anterior to the date of the lease. This was conceded by defendant's counsel. He put himself upon the ground that his client was an ignorant Italian, who imperfectly understood the English language ; that he was not aware of the effect of the sale under the attachment, and that the complainant had ratified the lease by accepting rent under it, and had encouraged the defendant in clearing and planting the land.

On these issues of fact the defendant fails. It was abundantly proved that it was thoroughly explained to him at the time of the auditor's sale that the title under it would be paramount to

King *v.* Wilson.

his lease, and that he was advised to bid, and did bid nearly to the amount at which the property was struck off to the complainant. Then the complainant thoroughly explained to him that he would not in any manner recognize the lease, and carefully protested on the occasion of each payment by giving him a receipt for use and occupation only.

Complainant waited three or four years before filing his bill for partition in the hope that negotiations for a sale of his interest to the defendant Capella would result in such sale.

The defendant further set up that complainant acquiesced in the improvements made by Capella after the sale. This is also thoroughly denied by the complainant, and he swears, and I believe him, that he protested against those improvements, and warned Capella that he was liable to lose them. Defendant's counsel again set up that his client did not understand the partition proceedings. Here, again, the facts are against him. They were fully explained to him by the complainant, and his conduct pending the proceedings is consistent with his fully understanding them.

I can find nothing in the case which would warrant the court in opening the decree and allowing the defendant to come in and defend.

The next question is as to the remedy by injunction.

The law on the subject of the power of the court to execute a decree of this kind was thoroughly examined and established by Chancellor Green in the case of *Schenck* v. *Conover, 2 Beas. 220,* and the practice established by that case of a writ of assistance issued to the sheriff to put in possession the purchaser at sheriff's sale of mortgaged premises. The reason which furnishes the basis of the authorities cited by Chancellor Green in *Schenck* v. *Conover,* is not confined to the cases of purchasers at a sale under foreclosure, but includes all cases in this court where the right to the possession of land is involved and directly dealt with. In fact, it applies with more force to such cases than to one where a stranger purchases land at a sale by virtue of a decree of this court; because, in the latter case, the decree does not, in direct terms, declare that any person is entitled to the

possession of the land, but only directs it to be sold and that a good title shall pass thereby. It was, at one time, seriously questioned whether or not it could be said to be the duty of the court in executing its decree of sale to put the purchaser in possession. But in a case of partition, where the possession is distinctly decreed to each of the parties, the case is quite different.

I do not find among the authorities any case of partition where the principle has been applied. But it appears to have been assumed by Lord Hardwicke, in *Roberdeau* v. *Rous, 1 Atk. 543*, that it did apply in partition. In *Huguenin* v. *Baseley, 14 Ves. 273*, the court set aside a conveyance of land, at the instance of the grantor, on the ground of fraud; and, subsequently, in the same case (*15 Ves. 180*) enforced the decree by injunction for possession. And the same remedy was applied in *Devaucene* v. *Devaucene, 1 Edw. Ch. 272*.

Our statute (*Rev. 1877 p. 115 § 64*) declares that after a decree

"it shall be lawful for the court  *  *  *  to cause, by injunction, the possession of the estate  *  *  *  whereof the possession  *  *  *  is decreed, to be delivered to the complainant or otherwise, according to such decree and as the nature of the case may require."

This language covers the case in hand.

It is not necessary here to resort to the writ of assistance, since the land consists of open fields and woods, and is incapable of more than formal delivery and possession.

An injunction to prevent defendant from interfering with complainant's possession is all that is necessary, in the first instance, at least. See *Stribley* v. *Hawkie, 3 Atk. 275*. Moreover, an injunction here is the more efficient remedy, since the weight of the evidence is that the damage which will result from defendant's interference will be serious and not easily computed, and the defendant is of doubtful pecuniary responsibility.

I will advise an order that the defendant be restrained from entering upon any part of the premises set off to the complainant, or molesting him in any way in the possession and enjoyment thereof.